23CA1744 Peo v Baez-Diaz 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1744
El Paso County District Court No. 22CR3815
Honorable Chad Miller, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Yashira Baez-Diaz,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Philip J. Weiser, Attorney General, Joshua J. Luna, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1      Defendant, Yashira Baez-Diaz, appeals the judgment of conviction entered on a jury verdict finding her guilty of second degree assault.  She contends that the trial court reversibly erred by instructing the jury on the initial aggressor exception to self-defense and by admitting evidence that implied she was unhoused and complicit in uncharged criminal misconduct.  We affirm.

## I.      Background

¶ 2      On the night in question, Ashley Barreras returned to the apartment she shared with her grandmother and found a stranger — later identified as Baez-Diaz — in the kitchen.  Barreras noticed that Baez-Diaz had brought some of her belongings into the apartment.  When Barreras told her to leave, Baez-Diaz refused, claiming that she lived in the apartment and was on the lease.

¶ 3      Barreras called her brother and his girlfriend for help.  Because Baez-Diaz ignored the brother's repeated orders to leave, the brother "pushed [Baez-Diaz] towards the door" and managed to force her outside.  But she would not leave the area until she collected her belongings, so Barreras went outside and threw the items toward Baez-Diaz.  While they were outside, the women engaged in a physical fight, during which Baez-Diaz stabbed

Barreras in the arm. The brother pulled Barreras away from Baez-Diaz, but, as the siblings retreated toward the residence, Baez-Diaz charged at the brother. The brother hit Baez-Diaz in the face, knocking her down. A passing tow truck driver broke up the altercation, and Baez-Diaz ran away. Once Barreras and her brother were back inside the apartment, the brother realized he had been stabbed in the chest.

¶ 4    The State charged Baez-Diaz with second degree assault against Barreras, first and second degree assault against the brother, and burglary. At trial, Baez-Diaz claimed that she had acted in self-defense. A jury found her guilty of second degree assault against the brother but acquitted her of the remaining charges. The district court sentenced Baez-Diaz to probation.

## II.    Initial Aggressor Jury Instruction

¶ 5    Baez-Diaz asserts that the trial court erred by instructing the jury on the initial aggressor exception to self-defense because the evidence was insufficient to support it. We disagree.

### A.    Legal Authority and Standard of Review

¶ 6    Under Colorado law, a person has the right to use physical force against another person to defend herself from what she

2

reasonably believes to be the use of unlawful physical force by that other person. § 18-1-704(1), C.R.S. 2025.

¶ 7     But there are exceptions to this general rule. As relevant here, a person may not use force to defend herself if she was the "initial aggressor." § 18-1-704(3)(b). Thus, one way the prosecution can disprove the affirmative defense of self-defense is to prove beyond a reasonable doubt that the defendant was the initial aggressor. *People v. Mosley*, 2021 CO 41, ¶ 18. An initial aggressor is "the person who initiated the physical conflict by using or threatening the imminent use of unlawful physical force," which includes acting in a "physically threatening" manner. *Castillo v. People*, 2018 CO 62, ¶¶ 43-44.

¶ 8     A court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support the giving of an instruction. *Id.* at ¶ 34. Therefore, when a trial court instructs the jury on self-defense, it should also instruct on the initial aggressor exception to that defense if there is "some evidence" to support the exception. *Galvan v. People*, 2020 CO 82, ¶ 25. "[S]ome evidence" means evidence sufficient to support a reasonable

inference that the defendant was the initial aggressor. *People v. Roberts-Bicking*, 2021 COA 12, ¶ 31.

¶ 9     We review de novo whether sufficient evidence exists to support an initial aggressor instruction. *Id.* at ¶ 32. In doing so, we view the evidence in the light most favorable to giving the instruction. *Galvan,* ¶ 33.

## B.     Analysis

¶ 10     Baez-Diaz contends that the court erred by instructing the jury on the initial aggressor exception to self-defense because the evidence showed that it was Barreras and the brother, not her, who initiated the physical conflict — by physically forcing her out of the apartment. The People counter that regardless of what occurred inside the apartment, the evidence supported a finding that Baez-Diaz was the initial aggressor outside the apartment, at the time she allegedly stabbed the brother in self-defense, and therefore the instruction was proper.

¶ 11     We agree with the People. In fact, at trial, everyone acknowledged that the initial aggressor issue related solely to the physical altercations that occurred outside the apartment.

¶ 12    The theory of defense, as set forth in an instruction, was that "[a]fter Ms. Baez Diaz [wa]s forcefully removed from the apartment, she was attacked by Ashley Barreras and [the brother] outside the apartment, where Ms. Baez Diaz lawfully defended herself."  In closing argument, defense counsel asserted that the Barreras siblings were the initial aggressors based on their conduct *outside* the apartment: "the physical fighting, the attacking [Baez-Diaz], the punching [Baez-Diaz], spitting in her face happen[ed] outside," which was why, according to defense counsel, "[Baez-Diaz] defend[ed] herself outside."

¶ 13    The prosecution took the same tack.  It told the jury during closing argument that the assault counts were based on conduct that occurred outside, after the brother pushed Baez-Diaz out of the apartment.  He argued that Baez-Diaz stabbed Barreras during their fight outside and that she stabbed the brother when she charged at him.  The prosecutor's theory was that Baez-Diaz's self-defense claim failed because "[w]hen you're thrown outside and you run at somebody, stab them in the chest, you're the initial aggressor."

¶ 14    The problem with Baez-Diaz now arguing that the Barreras siblings were initial aggressors based on their conduct *inside* the apartment is that no evidence or legal authority was presented to support that position at trial.  An initial aggressor is not simply the person who initiates a physical conflict, as Baez-Diaz argues on appeal.  A person is an initial aggressor only if he initiates the physical conflict by using or threatening to use *unlawful* force.  *Castillo*, ¶ 43.  So Barreras and the brother could only be initial aggressors from the outset of the incident if they had no right to use any degree of force to remove Baez-Diaz from the apartment.

¶ 15    But the law says otherwise.  Under section 18-1-705, C.R.S. 2025, a person in possession of or privileged to be on the premises is justified in using "reasonable and appropriate physical force" against another person if such force is reasonably necessary to "terminate what he reasonably believes to be the commission . . . of

an unlawful trespass by the other person."[1]  Nor did defense counsel dispute that the siblings could use physical force to remove Baez-Diaz from the apartment.  To the contrary, in closing argument, counsel told the jury that it "[m]a[de] sense" that Barreras and the brother "physically push[ed] [Baez-Diaz] outside" to "get [her] the heck out of [their] apartment."

¶ 16     In changing course on appeal, Baez-Diaz does not explain why the Barreras siblings' use of force to remove her from the apartment was unlawful such that they could qualify as initial aggressors with respect to the events that occurred inside.  But even assuming they could, we conclude that a reasonable jury could have found that Baez-Diaz became the initial aggressor once the action moved outside.

---

[1] The prosecution initially requested an instruction under section 18-1-704.5, C.R.S. 2025, known colloquially as the "make-my-day" statute.  The statute allows the occupant of a dwelling to use any degree of physical force, including deadly force, against an intruder if certain conditions are met.  *See* § 18-1-704.5(2).  When the make-my-day statute applies, the dwelling occupant's use of force is lawful, meaning that the statute operates as a bar to an intruder's claim of self-defense.  *People v. Jones*, 2018 COA 112, ¶ 30.  The prosecution later withdrew its request for the instruction, presumably because Baez-Diaz's self-defense claim related solely to the altercations outside the apartment, rendering the make-my-day statute inapplicable.

¶ 17    Relying on *Castillo*, Baez-Diaz contends that the incident constituted one continuous episode, so if the siblings were the initial aggressors at the outset, they necessarily remained the initial aggressors throughout the entire episode.  But *Castillo* is distinguishable.

¶ 18    In that case, the defendant was in a parking lot when an unknown assailant opened fire.  *Id.* at ¶ 12.  The defendant retrieved a shotgun from the trunk of his car, racked it, and returned fire.  *Id.* at ¶¶ 12, 15.  Nearby police officers rushed to the scene and fired at the defendant, who then responded by shooting at the officers.  *Id.* at ¶ 16.  At trial, the defendant claimed he shot at the officers in self-defense, believing they were associated with the initial assailant.  *Id.* at ¶ 17.  The trial court instructed on the initial aggressor exception to self-defense, reasoning that the defendant's act of racking the gun could have made him the initial aggressor with respect to the part of the incident involving the police officers.  *Id.* at ¶ 26.

¶ 19    The supreme court disagreed.  It concluded that because the entire episode lasted a matter of seconds, the episode could not be separated into segments; therefore, the defendant, who was not the

initial aggressor for the first segment, could not be the initial aggressor for the second segment. *Id.* at ¶¶ 47-53.

¶ 20     But unlike in *Castillo,* the events in this case occurred over several minutes with "multiple breaks in the action." *People v. Cline*, 2022 COA 135, ¶ 52. First came the events inside the apartment, when the siblings ordered Baez-Diaz to leave and pushed her outside. Then came the fight outside the apartment between Barreras and Baez-Diaz. Then, finally, after that fight ended and the siblings were retreating inside, came the altercation between the brother and Baez-Diaz, which began with Baez-Diaz charging at the brother. *See id.* at ¶ 54 (where the defendant was charged with engaging in "sequential assaultive acts" over several minutes, he could become the initial aggressor even if he did not initiate the first physical conflict). Because the events did not constitute "one unit of experience," the jury did not have to find that there was only one initial aggressor "as to the entire episode." *Castillo*, ¶¶ 48-49.

¶ 21     Thus, even setting aside the issue of whether Barreras and the brother could be initial aggressors with respect to the events inside the apartment, we conclude that the evidence was sufficient to

9

support a finding that Baez-Diaz became the initial aggressor as to the events outside and, in particular, the altercation with the brother. The trial court therefore properly instructed on the initial aggressor exception to self-defense. *See Galvan*, ¶ 32 ("If the 'some evidence' standard is met, . . . the court should instruct the jury on the exception in question."); *People v. Newell*, 2017 COA 27, ¶ 28 ("It is for the jury, not the judge, to decide which witnesses and even which version of the witnesses' testimony is to be believed"; thus, "[o]nce . . . the prosecution has offered evidence that the defendant was the initial aggressor, the jury should be provided with . . . the initial aggressor exception, and be permitted to weigh the evidence to decide whether self-defense has been disproved.").

## III.   Evidentiary Ruling

¶ 22     Baez-Diaz next asserts that the trial court reversibly erred by permitting the jury to hear evidence that suggested she was unhoused or complicit in uncharged misconduct. We are not persuaded.

### A.   Legal Authority and Standard of Review

¶ 23     Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of

the action more probable or less probable than it would be without the evidence." CRE 401. All relevant evidence is admissible, except as otherwise provided by constitution, statute, or rule. CRE 402; *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).

¶ 24 Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403.

¶ 25 Additionally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character," but the evidence may be admissible for other purposes. CRE 404(b)(1). When CRE 404(b) is triggered, a court must determine admissibility by applying the four-part test set forth in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). *See People v. Owens*, 2024 CO 10, ¶ 110; *see also Rojas v. People*, 2022 CO 8, ¶ 52 (the applicability of CRE 404(b) depends on whether the evidence is intrinsic or extrinsic to the charged offense).

¶ 26 "Trial courts have broad discretion in determining the admissibility of evidence based on its relevance, its probative value, and its prejudicial impact." *People v. Elmarr*, 2015 CO 53, ¶ 20.

Thus, we review a court's evidentiary rulings for an abuse of discretion. *Campbell v. People*, 2019 CO 66, ¶ 21. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or where it is based on an erroneous view of the law. *Elmarr*, ¶ 20.

¶ 27 Where, as here, a defendant objects to the admission of evidence, we review any error in the admission of such evidence for nonconstitutional harmless error. *Pernell v. People*, 2018 CO 13, ¶ 22. "Under [this] standard, an erroneous evidentiary ruling does not require reversal unless the ruling affects the accused's substantial rights," *Nicholls v. People*, 2017 CO 71, ¶ 17, or there is "a reasonable probability that the court's error contributed to [the defendant's] conviction." *People v. Short*, 2018 COA 47, ¶ 54. "Thus, we will reverse only if the error substantially influenced the verdict or impaired the fairness of the trial." *Campbell*, ¶ 22.

## B. Analysis

¶ 28 The prosecution sought to admit recordings of Baez-Diaz's jail calls, which included her admission that she stabbed the siblings. One of the recorded calls also contained her statement that, after the incident, "the dude that I was with, that I was sleeping behind

12

his truck, he popped their tires and . . . took the girl's purse" (challenged statement).

¶ 29 Defense counsel objected to the admission of the challenged statement, arguing that it (1) impermissibly suggested that Baez-Diaz was, or looked like she was, "homeless"; and (2) impermissibly discussed uncharged misconduct of another person in violation CRE 403 and CRE 404(b). The trial court made admissibility findings on each statement in the recordings and found that the challenged statement was admissible.

¶ 30 The prosecutor played the recordings for the jury and mentioned the challenged statement during his closing argument.

¶ 31 Assuming without deciding that the admission of the challenged statement was error, we conclude that the error was harmless.

¶ 32 First, the challenged statement constituted a brief portion of the four-day jury trial and was the subject of a single reference in closing arguments. *See People v. Martinez*, 2020 COA 141, ¶ 43 (The erroneous admission of evidence was harmless because it "constituted a minor portion of [the defendant's] trial."); *People v. Mendenhall*, 2015 COA 107M, ¶ 69 (same); *People v. Casias*, 2012

13

COA 117, ¶ 81 (Error in the admission of evidence was harmless where the trial contained only a "few (including, sometimes only generic) references to the inadmissible evidence."). And the reference itself was more of an aside; the prosecutor's point was focused on the preceding portion of the recording, where, according to the prosecutor, Baez-Diaz was attempting to "justify what happened" by falsely claiming that the siblings entered the apartment together and immediately accosted her.

¶ 33 Second, the jury's verdict, consisting of its conviction on one lesser-included offense and its acquittal on the other, more serious charges, demonstrates that, notwithstanding the admission of the purportedly improper evidence, the jury was able to properly weigh and evaluate the admissible evidence and the charges. *See Martin v. People*, 738 P.2d 789, 795-96 (Colo. 1987) (A split verdict "is an indication that the jurors exercised some discretion in their deliberations and did not blindly convict the defendant based upon inferences drawn from" improper evidence.); *People v. Vanderpauye*, 2021 COA 121, ¶ 39 (whether an error is harmless depends, in part, on the impact of the improperly admitted evidence on the trier of fact), *aff'd*, 2023 CO 42; *People v. Delgado-Elizarras*, 131 P.3d

14

1110, 1112-13 (Colo. App. 2005) (Any error in the admission of other act evidence was harmless where the defendant's acquittal on a greater charge and conviction on only the lesser offenses "demonstrate that the jury based its verdicts on evidence of [the] defendant's conduct at the scene, and not on any conclusions regarding [the] defendant's propensity to engage in criminal conduct."); *People v. Braley*, 879 P.2d 410, 414-15 (Colo. App. 1993) (There was no "suggestion in the record that the jury's decision was made on an improper basis," and "[t]he fact that [the] defendant was acquitted of the charges concerning one of the three victims indicates that, to the contrary, the jury could fairly and properly weigh and evaluate this evidence.").

¶ 34    Third, we note that the jury was properly instructed that it "must not be influenced by sympathy, bias or prejudice in reaching [its] decision." *See People v. Carter*, 2015 COA 24M-2, ¶ 59 (absent evidence to the contrary, we presume the jury followed the court's instructions).

¶ 35    For these reasons, we are not convinced that any error in the admission of the challenged statement substantially influenced the verdict or impaired the fairness of the trial. *See People v. Gaffney*,

769 P.2d 1081, 1088 (Colo. 1989) ("If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless.").

## IV.   Disposition

¶ 36   The judgment of conviction is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.